# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **JOHN G. GREEAR,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:21CV00017 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **KILOLO KIJAKAZI,** ) | Judge James P. Jones |
| **ACTING COMMISSIONER** ) | |
| **OF SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Lewey K. Lee, The Lee Law Firm of Wise, P.C., Wise, Virginia, for Plaintiff; Kenneth Di Vito, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I will grant the objections of the Commissioner of Social Security (Commissioner) to the report and recommendation (Report) of the magistrate judge and affirm the Commissioner's disability determination.

I.

John G. Greear challenges the final decision of the Commissioner denying his claims for disability insurance benefits under certain provisions of the Social Security Act (Act). The action was referred to United States Magistrate Judge Pamela Meade Sargent to conduct appropriate proceedings. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Magistrate Judge Sargent filed her 23-page

Report on August 10, 2022, in which she recommended that the court deny both parties' motions for summary judgment, vacate the Commissioner's decision, and remand for further development. On August 15, 2022, the Commissioner filed written objections to the Report. Greear neither objected to the Report nor filed a response to the Commissioner's objections within the time allowed for doing so. The objections are ripe for decision.

I must make a de novo determination of those portions of the Report to which the Commissioner objects. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Under the Act, I must uphold the factual findings of the administrative law judge (ALJ) if they are supported by substantial evidence and were reached through application of the correct legal standard. *See Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir. 1987). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

If such evidence exists, my inquiry is terminated and the Commissioner's final decision must be affirmed. *Id.* But I may not "reflexively rubber-stamp an ALJ's findings." *Arakas v. Comm'r*, 983 F.3d 83, 95 (4th Cir. 2020) (citation omitted).

"To pass muster, ALJs must build an accurate and logical bridge from the evidence to their conclusions." *Id.* (internal quotation marks and citations omitted).

The Report sets forth in extensive detail the plaintiff's relevant history. Greear, a former pipefitter, filed his latest application for benefits on July 10, 2018, alleging disability beginning on June 1, 2006, based on arthritis; back, knee, and shoulder problems; depression; borderline diabetes; thyroid problems; and high blood pressure. The ALJ determined that Greear had the following severe impairments — degenerative disc disease, thyroid gland disorder, other and unspecified arthropathies, and obesity — but had non-severe mental impairments. After determining Greear's residual functional capacity (RFC), the ALJ found that Greear was able to engage in a limited range of sedentary work and that jobs existed in the national economy that Greear could have performed. Therefore, the ALJ concluded that Greear was not disabled.

The magistrate judge found that the following findings of the ALJ, which constitute the Commissioner's final decision, were not supported by substantial evidence: (1) his consideration of the medical evidence; (2) his determination that Greear did not suffer from a severe mental impairment; (3) his RFC determination; and (4) his overall finding that Greear was not disabled. The magistrate judge specifically concluded that the ALJ failed to adequately evaluate the persuasiveness of medical opinions from Drs. Lanthorn, Cooper, Leizer, and Smith.

In her objection, the Commissioner contends the ALJ's evaluation of Drs. Lantham and Smith was sufficient and in accord with the applicable regulations and case law. As to the ALJ's evaluation of the Dr. Cooper and Dr. Leizer's records, the Commissioner argues that such records do not constitute medical opinions or alternatively, any inadequacy in the ALJ's discussion of such evidence was harmless. Moreover, the Commissioner asserts that substantial evidence supports the ALJ's determination as to the severity of Greear's mental impairments. The Commissioner therefore contends that no remand is necessary.

## II.

### A. Step Two Finding: The Severity of Greear's Mental Impairments.

To determine whether an individual is disabled under the Act, ALJs use a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At the second and third steps, the ALJ considers the medial severity of a claimant's impairments. *Id.* In evaluating claimed mental impairments at step two, an ALJ must determine whether the claimant has a medically determinable impairment by specifying the relevant symptoms, signs, and laboratory findings; rate the degree of functional limitations resulting from the impairments; and then determine the severity of such impairments. *Id.* § 404.1520a. At step three, the ALJ considers whether such impairments meet the criteria of the listed impairments in Appendix 1 of the applicable regulations. Before moving to steps four and five — where an ALJ

determines whether a claimant has the capacity to perform the requirements of his past relevant work or any other work in the national economy — the ALJ must determine the claimant's RFC, his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *Id.* §§ 404.1520(e), 404.1545. The ALJ must consider all of the claimant's medically determinable impairments, both severe and non-severe, in determining a claimant's RFC. *Id.* § 404.1545(a)(2).

Here, the ALJ found at step two that Greear's medically determinable mental impairments "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore non-severe." R. at 15. In doing so, the ALJ considered the four regulatory functional categories, the claimant's ability to "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself[.]" 20 C.F.R. § 404.1520a(c)(4); R. at 15–18. The ALJ cited to medical evidence in the record generally showing no serious deficits in these areas and that Greear's mental distress was controlled by medication. He recognized that Greear did not regularly complain of problems within the functional areas and highlighted evidence showing that Greear could complete a variety of daily tasks that required some proficiency in the functional areas. The ALJ's finding at step two is supported by substantial evidence.

In making such step-two determination, however, the ALJ did not address the cognitive deficits identified by B. Wayne Lanthorn, Ph.D., in his psychological report or a severity indication indicated in Dr. Leizer's disability determination report. Nevertheless, to the extent that the ALJ erred in not assessing these medical reports in step two, such error is harmless. The ALJ found that Greear suffered from four severe impairments, so step two was resolved in his favor and the ALJ proceed with the remaining steps in the evaluation process. The ALJ then considered all of Greear's impairments, including his mental impairments, in making his RFC determination and specifically analyzed Drs. Lanthorn's and Leizer's reports in doing so as discussed *infra*. Consequently, any inadequacy in the ALJ's step two severity determination is harmless because the ALJ considered the evidence and Greear's mental impairments elsewhere in the determination *See Mills v. Kijakazi*, No. 9:20-1403-DCN-MHC, 2021 WL 4699079, at *6–7 (D.S.C. May 10, 2021) (collecting cases and finding no reversible error when an ALJ does not label an impairment as severe at step two but analyzes the impairment elsewhere in the decision), *R. & R. adopted by Mills v. Saul*, No. 9:20-cv-1403-DCN-MHC, 2021 WL 4026074 (D.S.C. Sept. 3, 2021). Accordingly, I will sustain the Commissioner's objection as to the ALJ's severity determination for Greear's mental impairments.

## B. The ALJ's Evaluation of Certain Medical Evidence.

The crux of the Commissioner's objections and the magistrate judge's Report turns on the adequacy of the ALJ's evaluation of medical evidence from Drs. Lanthorn, Cooper, Leizer, and Smith within the RFC portion of the determination.

For claims filed after March 27, 2017, an ALJ will not give any specific evidentiary weight to medical opinions or prior administrative medical findings, but rather will consider and articulate the persuasiveness of such opinions. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ must address two factors: supportability and consistency. *Id.* § 404.1520c(b)(2) (indicating that ALJs may consider other enumerated factors but confirming that supportability and consistency are the most important factors that must be addressed). The opinion source's use of relevant objective evidence and the quality of explanation pertain to the supportability of the medical opinion. *Id.* § 404.1520c(c)(1). An opinion's consistency with evidence from other medical and nonmedical sources goes to the consistency factor. *Id.* § 404.1520c(c)(2). Notably, an "ALJ need not necessarily use the words 'supportability' or 'consistency,' as long as the ALJ still performs the requisite analysis of these factors." *Todd A. v. Kijakazi*, No. 3:20cv594, 2021 WL 5348668, at *4 (E.D. Va. Nov. 16, 2021).

### *i. Dr. Lanthorn's Report.*

The Commissioner objects to the Report's findings that the ALJ failed to adequately address the supportability and consistency factors in assessing the persuasiveness of Dr. Lanthorn's medical opinion. Dr. Lanthorn opined that Greear's mental impairments would affect his cognitive functioning and would prevent him from returning to his former job. The ALJ found Dr. Lanthorn's opinion to be unpersuasive because "it did not provide a residual functional capacity or detailed limitations." R. at 28. This explanation in and of itself is insufficient because it does not address supportability and consistency. However, the ALJ's explanation went beyond this blanket statement. He cited to other medical evidence in the record indicating that Greear's mental disorders were usually controlled by medication and that Greear did not attend counseling sessions or have any psychiatric admissions. This explanation pertains to consistency.

The ALJ also found that Dr. Lanthorn did not sufficiently explain whether Greear's impairment-related limitations meant Greer could work with reduced requirements. He also reasoned that Dr. Lanthorn relied only on pre-2007 records and that Dr. Lanthorn based his opinion on Greear's self-reports. These explanations pertain to the opinion's supportability. Accordingly, I find that the ALJ sufficiently assessed the persuasiveness of Dr. Lanthon's opinion, even though he did not

explicitly use the terms supportability and consistency. *Todd A.*, 2021 WL 5348668, at *4. I will sustain the Commissioner's objection as to that portion of the Report.

*ii. Dr. Cooper's Report.*

The Commissioner also objects to the Report's findings as to the ALJ's consideration of Dr. Cooper's medical opinion. The Commissioner contends that Cooper did not offer a medical opinion as to Greear's mental impairments, and therefore the ALJ did not need to address supportability and consistency in evaluating Dr. Cooper's report. Alternatively, the Commissioner argues that to the extent that Dr. Cooper's findings were medical opinions, any inadequacy in assessing supportability and consistency is harmless because Dr. Cooper did not ascribe any limitations to Greear's mental impairments.

A medical opinion is defined as a "statement from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" involving certain activities: the claimant's ability to perform physical demands of work activities (e.g. sitting, walking, lifting); the ability to perform mental demands of work (e.g. understanding, remembering, maintaining concentration); the ability to perform other demands of work (e.g. seeing and hearing); and the ability to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2).

C. Marcus Cooper, Ph.D., completed a psychological pain evaluation for Greear on July 28, 2005. He made several recommendations as to treatment and indicated that Greear "ha[d] some depression . . . and some worries because he is fearful of being out of work due to procedures." R. at 787. I agree with the Commissioner that these statements do not constitute medical opinions under the applicable regulations. However, Dr. Cooper also opined that Greear had average intellectual functioning and no significant problems with memory, concentration, or judgment. This is an opinion on what Greear could do despite his mental impairments, and thus constitutes a medical opinion. 20 C.F.R. § 404.1513(a)(2).

In assessing the persuasiveness of Dr. Cooper's report, the ALJ explained that it was unpersuasive because "it did not provide a residual functional capacity or any limitations." R. at 26. The ALJ noted that the opinion was written before the alleged onset date and that Dr. Cooper did not treat Greear during his claimed disability period. The ALJ did not address Dr. Cooper's psychological findings but focused on Dr. Cooper's statements regarding Greear's need to speak with other physicians about further physical limitations and that there were no contraindications as to potential procedures for Greear's back pain.

I agree with the Commissioner that the ALJ's failure to address Dr. Cooper's psychological findings was harmless. Dr. Cooper did not find that Greear was limited in any way but opined only on what he believed Greear could do, that is

function intellectually at an average level and remember, concentration, and exhibit judgment within normal levels. Addressing such opinion would not have conceivably resulted in a different outcome for Greear because it does not suggest the need for any mental impairment related limitations. *Morgan v. Barnhart*, 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished) (noting that when reviewing an administrative order, "reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached." (internal quotation marks and citation omitted)). Accordingly, I will sustain the Commissioner's objection as to that portion of the Report.

### *iii. Dr. Leizer's Report.*

Joseph Leizer, Ph.D., a state agency psychologist, completed a portion of a disability determination report dated March 2019. Within such report, Dr. Leizer indicated that Greear had severe mental impairments, but he found that there was insufficient evidence to assess Greear's functional mental limitations. R. 137–38.

Similar to the reports discussed previously, the ALJ found Dr. Leizer's findings to be unpersuasive because he "did not provide a residual functional capacity or any limitations." R. at 26. The ALJ proceeded to explain that other evidence did not support that Greear had severe limitations because medication controlled Greear's impairments, Greear did not attend counseling sessions or have any psychiatric admissions, and Greear reported he could perform a number of

activities. The ALJ also noted that Dr. Leizer did not regularly treat Greear or have access to his hearing testimony.

I agree with the Commissioner that the contents of Dr. Leizer's report do not include medical opinions. 20 CFR § 404.1513(a)(2). However, his report does constitute a prior administrative medical finding because it was made at a prior level of review in Greear's current claim and addressed, inter alia, the existence and severity of Greear's impairments. *Id.* § 404.1513(a)(5).[1] Thus, the ALJ was required to address supportability and consistency. *Id.* § 404.1520c(a), (b) (requiring the consideration of both factors for both medical opinions and prior administrative medical findings).

As with his other analyses, the ALJ did not specifically mention the terms supportability or consistency when addressing Dr. Leizer's findings, but that alone does not render the ALJ's analysis insufficient. *Todd A.*, 2021 WL 5348668, at *4. I find that the ALJ did address consistency by citing to other evidence indicating that Greear's mental disorders were usually controlled by medication, that Greear did not attend counseling sessions or have any psychiatric admissions, and that Greear reported that he could perform a number of activities such as household chores.

---

[1] The report relevant indicates it was made for Greear's instant disability claim at the reconsideration level. R. at 130.

However, I do find that the ALJ did not address supportability.  The ALJ explained that Dr. Liezer did not have access to Greear's hearing testimony or regularly treat Greear, but he did not address the sufficiency or relevance of the records relied upon by Dr. Liezer in finding that Greear's impairments were severe or address whether Dr. Liezer properly explained or supported his findings in the report.  Nor did the ALJ even mention that Dr. Leizer marked Greear's mental impairments as severe.  The ALJ's failure to reasonably articulate the supportability factor or acknowledge a portion of Dr. Leizer's relevant findings constitutes an error. *See Boyd v. Kijakazi*, No. 2:21cv29, 2022 WL 949904, at *3 (E.D. Va. Mar. 29, 2022).

Nonetheless, I find that this error is harmless and does not warrant remand.  As explained above, the ALJ's classification of Greear's mental impairment as non-severe did not end the ALJ's sequential evaluation at step two.  Moreover, Dr. Leizer's prior administrative finding did not include any limitations or restrictions, including those tied to Greear's supposedly "severe" mental impairments.  As such, remand would not result in a different result.

Accordingly, I will sustain the Commissioner's objection to this portion of the Report.

*iv. Dr. Smith's Reports.*

Finally, the Commissioner objects to the magistrate judge's finding that the ALJ did not properly evaluate the findings of Ken W. Smith, M.D., that Greear was unable to return to work, particularly that he was unable to return to heavy demand requirements. R. at 404, 407, 410.

I agree with the Commissioner that the ALJ did address the supportability and consistency factors in assessing the persuasiveness of Dr. Smith's findings even though the ALJ did not explicitly refer to such factors. The ALJ recognized Dr. Smith's opinion but found that Dr. Smith did not explain whether such restrictions on returning to heavy demand requirements meant Greear could not perform any work-related tasks. He also explained that Dr. Smith's opinions were not based on observations after 2007 and that Dr. Smith himself noted that there was no need for additional neurosurgical monitoring or surgical intervention. These explanations address supportability. The ALJ also cited to other evidence showing that Greear was generally treated with pain medication from 2007 through 2010, which pertains to consistency.

Accordingly, I find that the ALJ sufficiently considered Dr. Smith's findings and will sustain the Commissioner's objection.

### III.

For the foregoing reasons, it is **ORDERED** as follows:

- 15 -

1. The Commissioner's Objections, ECF No. 14, are GRANTED;

2. The magistrate judge's Report and Recommendations, ECF No. 13, is REJECTED;

3. Plaintiff's Motion for Summary Judgment, ECF No. 9, is DENIED;

4. The Commissioner's Motion for Summary Judgment, ECF No. 11, is GRANTED; and

5. A separate final judgment will be entered herewith.

ENTER: September 15, 2022

/s/ JAMES P. JONES
Senior United States District Judge